Good morning, your honors. Adrienne Mary Preetz for the Kaiser Defendants and Appellants. And I'd like to reserve about five minutes for rebuttal. Fine. This copyright case is about the work-for-hire doctrine for commissioned works. Voice up, please. Sorry. The thing that baffles me the most is you contend that the copyrights belong to Kaiser, right? That's correct. Well, then why were you paying for the extension of the media coverage on them? If they belong to you, why would you pay for it? Well, I guess I have two responses to that. First of all, it's Kaiser's contention and testimony that the media usage related to the extension of the model rights, and that that's a completely separate issue. But I think the more important issue here is that the media usage is dealt with in separate documents, which really are not part of the contract that ought to be controlling the proceeding. I mean, there is a very clear agreement between the parties, the engagement agreements, which set forth that the photographs were works made for hire, that they're owned by Kaiser. If they didn't qualify as works for hire, they're assigned to Kaiser. This is a clear agreement that tracks the statutory scheme. But, I mean, why were you paying for it then? You're paying a lot of money. I mean, it wasn't really what the district judge found that it wasn't credible to suggest that it was really for the models, because the money wasn't going to the models. Well, there's a couple of responses to that. One response is, of course, that some of the employees at Kaiser who were paying that money probably did not read the contracts and did not understand, if the judge is right, that the media usage dealt with something else, what the agreement was between the parties. But that kind of parole evidence can't really undermine a clear and unambiguous agreement on the issue of copyright ownership. Well, on the copyright ownership, I agree with you to the extent that there are agreements in force that the work for hire provisions in there are pretty clear. The question I have is, it seems to me that there are potential, in effect what the district court said, there's some potential gaps in the coverage of these agreements from a time perspective. And therefore, while you might have coverage to the extent that the agreements weren't in force or specifically extended, then you're basically left bare. And, of course, we know what happens then with independent contractors and others' copyright work. So would you agree that if an agreement were not in force, that Kaiser would not have any copyright protection? No, Your Honor. And let me explain that and explain the timing issue that the district court looked at. There were ten libraries at issue. For eight of those projects, the district court agreed with Kaiser that those are work for hire, the contracts couldn't be clearer because the estimates for the different projects covered by the agreements came after the signing of the engagement agreements. For the two libraries that were enjoined, what the district court found was that for each of those two libraries, what initiated the project was that the plaintiffs gave an estimate of the price and the timing of the work and Kaiser approved the estimate and then shortly after signed the work for hire contracts. Now, let's just take the 1999 project as an example. Three days before the signing of the engagement agreement, the plaintiffs submitted an estimate for what the work would cost on a preprinted estimate form. Three days later, the engagement agreement was signed. The court gave no effect to the engagement agreement in that case, relying instead on the estimate between the parties as the contract. Was the 1999 estimate signed by Kaiser? Signed by Kaiser, not by the plaintiffs. But it was signed by the vice president of Kaiser. It was signed by Kaiser. And that agreement, or at least that estimate signed and accepted by Kaiser, says that the creator retains the copyright rights, correct? Exactly. What it says is, except as specifically provided herein, the photographer retains the copyright. And was anything provided therein? Well, what happened after that was that the engagement agreement was signed. And I think the engagement agreement couldn't be clearer, not only to integration, but as to superstition. And I just want to read from page 9 of our brief. This clause was contained in the engagement agreement that was signed between Knauer and Kaiser three days after that first estimate. The ICS agreements, quote, contain the final, complete, and exclusive agreement between the parties hereto, and any prior agreements, promises, negotiations, or representations relating to the subject matter of this agreement, not expressly set forth herein, is of no force or effect. The court really ignored what is very well-known and commonly accepted integration and superstition language, that the engagement agreements that the parties entered into were intended, and clauses of this type are routinely used for this purpose, to supersede and make clear that anything that came before had no force and effect. Back you up on this. They started taking pictures in October and early November 1998, right? Well, it's unclear when exactly. The record is not clear on exactly when they started taking pictures. But it's very clear that that project was not completed for several months after the signing. But what do the copyrights apply to? Doesn't the copyright apply to each picture as it's developed, as opposed to the collection of pictures? Well, we would say it applies to the collection of pictures because that's what was intended. What did they register in the Copyright Office, each picture or the collection of pictures? The collection. They didn't get a, for each picture, they didn't get a copyright? No, they did not. They registered. They're listed as collections in the copyright certificate, is that correct? That's correct, Your Honor. And some published, some unpublished? Well, they were all published. But we contend the registrations were defective because they were registered. But I'm just saying what the certificate says, not what you argue. The certificate says unpublished. Okay. So as of the first contract was November 12th, right? That's correct. And the term of the contract specifically says November 12th to September 30th, 1999. Well, the term of the contract relates to when this photographer was under contract to Kaiser to take photographs for these compilations. It doesn't relate to the running out of the copyrights. I mean, the ownership. Right. I'm looking at the beginning. You're looking at the end. But the end, it says, in the beginning, it says the term of this agreement had begun on March 12th. Until November 12th. Right. So if it had begun on March 12th, isn't the time before March 12th not covered by this agreement, what went on before then, and that whatever copyright rights that they would have were not assigned or not works for hire for that interim? I know the district judge covered that whole library. But focusing on a subset of what he focused on, I think it's October 21st to November 11th. That wouldn't be correct because that's dealt with in the superstition clause in the contract. That raises a separate question then, I see. It raises this issue of whether such a clause really can do that. In other words, if you start your creation of something that's subject to copyright, is there validity to the superstition clause kind of after the fact? Can you, in effect, paper over a prior created creation? I believe you can. But let's just, for argument's sake, say that you couldn't. Okay. You know, say that that wasn't the case. I think the contract covers that, too. If you look at Section 13, you have what is commonly used in the intellectual property area as a complete setup for Kaiser to own the copyrights. It starts with the work-for-hire doctrine, which I believe Your Honor is addressing, that if the creation began before, can you make it a work-for-hire? Right. Even if it continued and was created after. In other words, can you create something after the fact? And let's say that you can't. I believe you can, and I believe there's case law to the effect that you can. But let's say that you can't. That's when the assignment provision kicks in. And in Section 13 of the contract, it clearly says, if for any reason these works don't qualify as works made for hire under the copyright law, then Knauer assigns to Kaiser for no additional consideration all of these copyrights, all ownership rights in the subject matter, in the photographs. And that's what the assignment provision is there for, because assignments, of course, are almost always created after the work is created. They almost always kick in after the work is created. That's the whole idea with assignments. So if we take that and we skip over the thornier legal issue about work-for-hire, we would then just have to match up whether there were any gaps in these contracts such that the assignment might not cover everything. Correct? That's correct, Your Honor, but there really wouldn't be because the contracts fall out. Okay, so let's just take 1999 and 2000 libraries, which are the ones that the district court addressed its injunction to. Is that right? That's right, and the contracts cover those libraries. And as to the first contract, it was entered into three days after the estimate approval for services was given, and the work continued. Technically, the work didn't begin until the work was approved and money was provided for the costs three days before the engagement agreement. Wasn't the first estimate the 21st of October? No, the first estimate was, I believe, November 9th, three days before the engagement agreement was signed. That's when it was signed. That's when the services were approved by Kaiser. Right, it's dated October 21st, though. It's sent over by, I guess, the photographers on the 21st. The date says October 21st. I have it right here. And then the 2000 library, Kaiser doesn't sign that estimate. Is that right? Neither party signed that estimate. And then you have the follow-on agreement with the work for hire and the assignment clauses. That's correct, and the work continued for four months after the signature on those ICS agreements. So I think, you know, if the court wanted to make the assumption that work began slightly before the signing of those engagement agreements and continued for several months afterwards, and you can look at it two ways. The work for hire doctrine, I think, would cover the work under copyright law either way. But even if it didn't, the court gave absolutely no effect to a clear assignment provision in these contracts that said if work for hire fails, Knauer signs. Coming back to the first contract, it's not very specific. It says services to be provided by contractor, photography services. Photography services. And then it says it begins on November 12th. And I see why you're saying three days. So why wouldn't, at least for that three-day period, whatever photographs they took for the three-day period wouldn't be included? Because the contract covers all photography services, and the contract supersedes any prior agreements, and the contract provides that the ownership of the photographs that result from those services resides in Kaiser either by work for hire doctrine or by assignment. Well, that doesn't quite answer the question, you know, what if there was an eight-month gap? And then would you say, well, everything is swept in by the assignment? Because we have to figure out what period. If we accept your assignment argument, it seems to me that our challenge then is to figure out what period does the contract cover? Because it couldn't cover just anything. Well, I think the Court is focusing on the period covered by the contract. But in fact, Section 13 really focuses on the work being covered by the contract and the services being covered by the contract because, and I'll just read from it, it says in the event it should be determined that the materials do not qualify as a work made for hire, the contractor will and hereby does assign to Kaiser for no additional consideration all right, title, and interest in the materials, including but not limited to, all copyright and proprietary rights relating thereto. Well, I mean, I'm still having a little conceptual problem that maybe you can help me with. I understand it's not necessarily a time period term, but it has to be at least a subject matter that is the focus of the contract, so that in your view that subject matter then would come under the assignment clause. So my question is, how do you know which subject matter falls in that contract if there are photos that are sort of close in time but are not within the temporal time of the contract? Well, the contract focuses on the photographic services provided by the plaintiffs. Those were the only services that the plaintiffs provided. And I don't think that the contract specifies or that the focus of the parties as expressed in there talks about term in relation to the materials. The term just really relates to a period of time that this photographer is engaged on an exclusive basis to provide these services. Now, if the photographer started somewhat before, it doesn't change the fact that the payment they're receiving, that the contract is for those services. And the intent of the ICS agreements, as they state, is to be the full and final and complete expression of the parties as to the subject matter that's covered and to supersede any prior agreements that might exist as to anything, including who owns the work. And so Kaiser just didn't realize this and they were paying for the renewal of the copyrights anyway. I mean, essentially that's what happened. And you're saying that they just made a mistake and they didn't catch it until the dispute arose. I think there are some instances, and that was part of the parole evidence that the district court admitted, where you can find some conduct that's clearly inconsistent with this scheme that's set forth in the contract. If that's the case, are you entitled to reimbursement or restitution for the money that you paid that you didn't have to pay? An argument could be made. It hasn't, but it could be made to that effect that those were mistakes. But, of course, if they were mistakes by Kaiser, then a judgment has to be made as to whether to ask for it back. I think the real problem, and I think this is something that this court recently dealt with in the case of Warren v. Fox Family Worldwide. That case is remarkably on all fours with this one in the type of problem that existed there and exists here. In the holding of the Warren court, this court confirmed decades of cases that parties can't introduce extrinsic evidence to contract the clear language of a contract. And what really makes Warren noteworthy here is that the case is on the same subject matter as this case. It's a copyright case. The plaintiff in Warren was an independent contractor who provided copyrightable works to the defendants under a series of written agreements. As here, the plaintiff's engagement agreements had these provisions that stated clearly that the works were works for hire. And also as here, the Warren plaintiff offered perhaps persuasive, extrinsic evidence that he didn't intend for the defendants to own the works that he created. The district court ruled, and this court affirmed in 2003, that the extrinsic evidence that the plaintiffs offered was legally irrelevant in light of the unambiguous length of the engagement agreements. Essentially that you can't look to inconsistent parole evidence that contradicts the terms of a contract and decide that those acts make an unambiguous contract suddenly ambiguous. If I take you to the second gap, we spent a lot of time on the first one, and I think you point out in essence it's really only three days. Now the second gap, the second estimate for the 2,000 group was November 22nd. And the contracts were signed a couple of months later, and then the work continued. January 26th. January 26th and February 1st, both covering. Why do you need two contracts? That confused me. Well, that's not entirely clear, but two contracts were signed covering the same library, and they're to the same effect. And the work continued. There's no dispute that the project of the 2,000 library was completed four months after the signing of those contracts. It's not entirely clear when that work commenced, but certainly it wasn't completed for four months after the signing of those. Ms. Naur testified that someone from Kaiser told her that before they can begin work or do work, any vendor has to sign the independent contracting agreement, correct? She did. Some of the first dialogue that's evident in the record points out that the engagement agreements were really the cornerstone of the deal between these parties. Assume for the moment Naur looked at that and said, no, no, no, that gives you the copyrights by assignment or work for hire either way. I don't want to sign them. Did she have a contract claim based upon your signing, Kaiser's signing of the first estimate on the 9th of November? Because in there, in the estimate, it says the copyright belongs to Naur, correct? In the estimate, there's a lot of issues on this. There's a preprinted form that was supposedly on the reverse side of the estimate. I think if you look at the record, there's some question as to whether any of those were ever transmitted to Kaiser. And that was a disputed fact, which the court noted it was quite troubled by. It was clear they were never on the reverse side. At most, what may have happened is subsequently some piece of paper with that boilerplate set of terms and conditions may have been sent to Kaiser. But there's no signature on those. The only signature from Kaiser is on the front page of the pricing estimate for the project that they received. But even assuming that they did get it, what does that estimate create in terms of a legal obligation that was, as you argue, superseded? But before the superseding, had there been no agreement on the 12th of November, what would the contract, would that have been a contract, the estimate? I don't believe so, Your Honor. There is California law cited in our brief, which I could find, that talks about the fact that estimates and invoices are typically not regarded as contracts under California law. And certainly this document that was only signed by one party could not suffice to create a work-for-hire agreement under the copyright code. So on that point, it couldn't have been a contract. But even if it was a contract, and in fact, if it was a contract, then I think it would clearly fall within the prior negotiations, agreements, et cetera, that are to be given no force in effect because of the subsequent signing of the ICS agreement. That's exactly what it addresses. We're here on a preliminary injunction, which is abuse of discretion standard. So would we need to determine that the district court made an error as a matter of law in its contract interpretation in order to reverse the district court? Well, I don't think you would need to look at it from the standpoint of abuse of discretion because the questions of law on the contract can be reviewed de novo and are supposed to be reviewed de novo by this court. Well, our law says that if there is an illegal error, that is, by definition, abuse of discretion. So I guess my question is that what you're asking us to determine is that the judge's contract interpretation was simply faulty. Well, I don't think it's contract interpretation, actually. I don't think the judge gave any effect to the contracts, in effect, for those two libraries because he determined that somehow these estimates trumped that and became the contract. When he looked at the contract in terms of the other eight libraries where he found that the estimates didn't precede the signing of the engagement agreements, he agreed with us on all of the obvious points, that there's a work-for-hire contract, that if there is no work-for-hire, there's an assignment. What you're saying is quite true, but I think Judge McEwen makes a point. We've been very clear in our case in sports forum that we just, when the case comes up to us again, the record may be different and we may have a different determination of it, and that's why we have this deference that we give the trial court. So the same thought crossed my mind under this contract determination. When a full record is there, the district court may make a different determination. Can we really focus just on his contract interpretation issue at this stage of determination as precisely as you would like to have us do it? I believe you can because I don't really think it's a question of interpretation. If the court were reading the ICS agreements in connection with those two libraries, he would have come out the same way as he did on the other eight, which is to say. But there's probably going to be some additional evidence and testimony, won't there be? Well, I don't know that the court after. I mean, we were not involved in the preliminary injunction proceeding. My firm came in after. That's right. But I think asserting the parole evidence. That was the whole purpose behind sports forum, and I'm sure you know that case of why we like to give more deference to the trial court. Well, thank you. We'll hear from the other side. Ms. Nauers, counsel. May it please the Court. My name is Neil Tardif, and I represent the appellee. Kaiser tries in this appeal to isolate the service agreement in a vacuum without taking into consideration all the other facts and evidence that was before the trial judge at the time. Just a minute. We don't have the clock set. Could you set the clock, please? One more minute. Now go down. Can I ask, the yellow light, where am I at on the yellow light? Your yellow light is five minutes. You have a clock there. Do you see that? Yes. All right. Thank you. Let me ask you a preliminary question, if I could. Yes. I was going to elbow my way in last time, but I got interested in listening to my colleagues' questions and didn't do so. As I understand it, on the 7th of November, then pushed over to the 14th, there was a motion before the district court on whether or not there's subject matter jurisdiction. That's correct, Your Honor. Has the district judge made that decision yet? Yes, Your Honor. And what was the decision that was made? The decision as to the images that are subject to this preliminary injunction motion was denied. The judge felt that it was a factual issue as to whether there was a publication or not a publication and a factual issue as to whether a supplemental registration could take care of any publication problems and that he felt as far as the complaint was concerned, because registrations were alleged in the complaint, that that gives him jurisdiction. Is the jurisdiction based upon the Copyright Act? Yes. It's not on diversity of citizenship? No, it's based upon the Copyright Act. As a matter of fact, he dismissed a couple of the library claims. So if there's no subject matter jurisdiction under the Copyright Act, then he'll have to dismiss the case? That's correct. Is that issue before us here, because we usually have to have power to make a decision before we make a decision, do we have to make a determination ourselves independently as to whether or not there is subject matter jurisdiction before we'll even make a ruling on whether the preliminary injunction should be reversed or affirmed? Well, I would have to say yes, Your Honor, because the preliminary injunction was issued under the Copyright Act, but for preliminary injunction purposes, all the plaintiff or claimant needs to do is actually file a registration. There does not have to be any determination as to whether it's valid or anything. For preliminary injunction purposes, all you have to show is that you actually filed a registration, even if the Copyright Office later down the line rejects that registration. Well, the nature of the argument is that the copyright registrations are invalid, so therefore there's no copyright registration and therefore no jurisdiction. Right. So it's a factual dispute as to whether there was publication before depositing the copyright applications. Correct. I guess I've always been briefed before. No, Your Honor, it is not. The question I'm asking is do we need to ask for rebriefing on the jurisdiction issue so that we know whether or not we have the power to act? No, because for preliminary injunction purposes, the only jurisdiction the district court needs is evidence of filing a registration, not acceptance by the Copyright Office, not validity to it, just filing it, and to be attacking the actual certificates in the final, that is at the trial level has to be determined before a final judgment can be made. But for this court, it has jurisdiction here in this case just by allegations that there was the filing of the registration, and that's all that's needed. Okay. My question on that, too, I wonder whether it's even jurisdictional, because it may be part of your cause of action, but there's no doubt that the federal courts have subject matter jurisdiction over copyright claims. In fact, exclusive, correct? Yes, Your Honor. Okay. If I may address some of the merits, other merits. Yes, I was just hoping that you'd tell us he granted the motion, and therefore we could go home and not deal with this very difficult issue. I don't think I'd be happy to grant the motion. I think I would have advised this court. The biggest problem I had, I had the problem of why are they paying for this. That's a problem I have with their case. And a problem I have with your case is why is your client signing these five agreements if they really don't have any meaning? Well, as the declaration of Karen Knauer indicated, they had entered into a project contract for a lot of money, and now it became time for the very first time. This independent contractor agreement, the service agreement, was not discussed in October when they were negotiating. It was not discussed on October 22nd when the actual photographic shoot started. It was not discussed on November 9th when the project contract was actually signed. And then when it came time on November 12th, Ms. Knauer, and the evidence shows this, that she submitted a request for an advance. And the request for an advance was actually the same exact estimate contract was submitted to Kaiser requesting an advance. And they said, oh, to get your advance before we can issue a check, you have to have these service agreements in place, and that's the reason for it, and to show that you're not an employee. Ms. Knauer testified she had no idea that it had anything to do with copyrights or assignments. My problem with that is that that doesn't really solve her problem, because she did sign the agreement. That's right. And if you look, you know, I'm sympathetic, because many artists are not familiar with the intricacies of copyright, as we know, and particularly these later changes on work-for-hire doctrine. But she did sign the contract, and the contract basically says, no matter what happens on work-for-hire or whatever, essentially anything under this contract is assigned to Kaiser. How do you get out of the assignment clause? Well, it's kind of a catch-22. The district court has a problem with that, and so what you have to determine, like you had indicated in the original argument, how do you determine what's being assigned? And for the district court, when he was analyzing that, he said, okay. He addresses it in his order. He says that Kaiser contends that there's an assignment. But when I go to look, the district court's saying this, when I go to look at the service agreement, I have to ask myself, what is being assigned? And so then you go to the service agreement to see what work we're talking about, and it says under conversation, all the work we're talking about is going to be negotiated on a project-by-project basis. So now the judge has to go back to the project agreement to see what's really being assigned, and then he has a valid contract there with all kinds of evidence afterwards that's enforcing that contract, so you can't determine what's assigned. Kaiser cites the Schiller case, and I think that that poses the problem. Did Karen Knauer have any copyrights to assign as of November 12th, at least for the completion of the project? What is copyrighted here, the collect the 1999 and the 2000 library or the individual photos? Well, that's a good question, Your Honor, because I think images can be copyrighted individually. There's no question about that. Was that done here? No. So the library wasn't created until they were done, correct? That's correct. So what's copyrightable wasn't in existence as of November 12th, 1998, correct? Well, that's not correct, Your Honor, because you can. Well, but in this case, I mean, technically all the photos she took between, you said the shoot started in October? Correct. So the photos she took between October 21st and November 11th could have been copyrighted, correct? Yes. But they weren't? Correct. All right, so we're dealing now with the volume, the copyright is for the volume, the library, and the library wasn't in existence at the time the November 12th agreement was signed, correct? Well, yes, the project was not completed as of November 12th. Everybody agrees with that. But they envisioned copywriting didn't exist yet, so why couldn't the copyright, when it finally came into existence, why couldn't that have been deemed assigned under the November 12th agreement? Well, because, number one, there was a valid contract that was entered into on November 12th that said the copyrights were owned by Karen Knauer. That's the estimate you're referring to? Yes. Okay, so that would assume that that's a valid contract. Yes. There's no doubt that that's a valid contract, and the district court held it as a valid contract. Well, that doesn't make it so with all deference to the district judge. He could have been wrong. Yeah, he could have been wrong. That rarely happens. It's there, but it could happen. All the terms were there. I mean, if you just apply black-letter law on a contract, you know, the price was there, the terms were there. Can I ask you that? Because I have the estimate here. Did they have to go through with all this or on November 12th say, Look, I'm not signing this agreement. I'm not giving up my copyright. Then couldn't Kaiser say, Well, send us a bill for what you've done. You know, take your cameras and get out of the hospital. Have they done that? In my opinion, no. Well, what in the estimate says that they're committed for a certain amount? It just says the estimated fees will be $130,000, but it provides that it can be canceled within 48 hours, but there's a cancellation fee, and it says all expenses are subject to normal trade variances of 10 percent. And nowhere does it say that the Kaiser is accepting and agreeing to pay $130,000. It's just an estimate. I mean, I'm looking at it right here. I know. It says an estimate, but, I mean, when you sign an estimate and you say that that's what you're going to pay, and now a photographer has to give up all of their other work and drop everything and turn down work in order to get the shoot together and go out and hire models and go out and pay for all the equipment that's needed for this particular shoot, and then you're saying, Okay, after all that, they can't. What they're saying is now you went ahead and signed this other agreement, and in that agreement it supersedes anything else that we may have had. Why isn't the superseding clause valid vis-à-vis your estimate paper? Because it's not consistent with the intent of the parties, Your Honor. Just because there's an integration clause in a contract, that doesn't mean it's a valid integration clause. Like I told you, the same exact day that she signed this independent contractor agreement, she submits the estimate with the same exact terms and conditions as the signed contract with the two-year license in order to get the advance, and they actually approve that estimate and give the advance. Normally, invoices, estimates, and that sort of thing don't really rise to the level of a contract. When you then follow it close on with a signed contract that deals specifically with any prior documents, it seems to me that's a matter of law, isn't it? It may be that the district court was right on it, or it may be he wasn't, but that that issue is really a legal issue, isn't it? In the factual setting that you have, it could rise to the level as a matter of law, these estimates or these invoices don't rise to a contract. But in this particular case, we have more than just an invoice, Your Honor. Well, the invoice could be canceled. On the face of it, it says there would be a cancellation fee. So assuming that the November 9th invoice, or not invoice, estimate constitutes a contract, one of the terms of the contract is that it can be canceled, correct? Within 48 hours. Right. And so now they enter into another contract. Isn't there consideration for the other contract that they're not canceling? They're entering into a more binding contract, and that has the assignment provision in it. Is that additional consideration? I would say not, because it brings it right back to the project. But they could have canceled, couldn't they? I mean, within 48 hours, they could have canceled. But what do you do then with the other two? Well, Your Honor, could I take that back? Yeah, finish that. I'm sorry. You know, it comes to a point where she actually started on October 22nd, I believe. You know, she submitted her invoice on October 21. There was a verbal agreement to get going. On October 22nd, she starts to shoot. And now you're going to enter on November 9th, they actually sign this. Your Honor, in this particular case, I would say that 48-hour provision is long gone. And I would say that they have put so much into it by then that they have partially performed. But what's it at that point? In other words, is the library created at that point? No. I mean, they've done a lot of different images, and they've created a lot of different images. But it's not done because the selection process hasn't been completed yet. I take it that the approach to this case is simply talking contract, that's all. The bulk of this case is contract interpretation. It would be under California law. Say again, Your Honor? It would be under California law. Yes, Your Honor. I think everybody agrees with that. Under California law, under certain circumstances, paroled evidence can commit and modify terms of the contract. How much paroled evidence is there before the district judge at the time he makes his ruling on the preliminary injunction? As compared to what's going to be at trial? Yes. Well, I think the bulk of the substantive evidence was before the judge. But like you had said, this is only a preliminary injunction. The judge could definitely change his mind when it comes time to trial. And there's going to be – A lot of us did. And there's a lot of deposition testimony that's been done since then. This testimony was done by affidavit and deposition. Yes, Your Honor. Not by live witnesses. No, we requested live witnesses, but it was denied. And it's a position of your client that there is some modification of the expressed terms of the agreement through paroled evidence? It's our position that the paroled evidence allows the district court to look beyond the service agreement for several reasons. Number one, we claim that it's not integrated at all, and therefore he can look beyond it. But even if it was fully integrated, that he can look beyond it because it's not, as the district court found, that it's ambiguous on its terms as to what's being assigned and what is really work for hire. Because you have to go back to the project, and all of a sudden you have a contract with the project that describes a two-year license, and then all the conduct of the parties from the very beginning to the very end was that there was a two-year license. What about the 2000 library where this little estimate wasn't even signed by Kaiser? Well, it's not clear that that contract was not signed, Your Honor. Karen Knauer testified that she does not recall whether it was signed or not. We have a signed copy? We don't have signed copies, Your Honor. Water, you know, California law. I can't see how we could argue that there's a signed copy somewhere. If she doesn't recall and we don't have a signed copy, don't you then? I've been left in 2000 with the 2000 library at least as to basically a single contract that's been signed, which is the ICAS agreement. But I don't think that matters, Your Honor, because there's no requirement that the two-year license be in writing. And there's no requirement for Karen Knauer to have the copyrights, that that has to be in writing. There was no question from the conduct of the parties throughout the previous year up until the- Copyright licenses required to be in writing? No, they're not. So your argument is no different from the 99 library and the 2000 library, even though Kaiser, not your client, signed the first one and neither signed the second? You don't think that has anything to do with anything? Absolutely not, Your Honor, because the testimony from Mr. Tomlinson in his declaration was that I, you know, that this 2000 was negotiated. It was negotiated on the terms and conditions that were provided to me, and that I approved those terms and conditions and paid on those terms and conditions, and that I didn't even know the service agreement existed when I negotiated this with Ms. Knauer for the 2000 library. So the judge made his decision based upon this parole evidence? Yes, Your Honor. Some of it's parole evidence, but some of it's not parole evidence. I don't consider acts after the execution of the service agreement to be parole evidence. These are acts after. Parole evidence deals with things prior to the agreement is my understanding of the law. This strikes me as, you know, I thought you had a pretty good argument on the first one, because you need those terms and conditions in the estimate as the foundation of your argument. And I could see an argument where even though she didn't sign it and the major agreement, subsequent agreement says both sides have to sign any other agreement, I could understand where you could argue, but you signed it, and that's good enough. But in the second one, neither person signed it, and yet the district judge found that that second estimate, even though unsigned by either parties, should be a part of the contract agreement? Yeah, because those terms and conditions, I mean, those terms and conditions were actually in writing, and so they were before Kaiser. It's not, oh, by the way, why don't we make an oral agreement, and it's going to be on the same terms and conditions as before. That's not what happened. What happened was they submitted a written document that had those terms and conditions on it, and it was approved and accepted and not signed. As far as we know, Your Honor. So what's your proof that it was approved and accepted? Williamson's declaration, he's the one who negotiated it, and in his declaration he said that he negotiated it with Ms. Knauer. He submitted it to Pam Phillips for approval. Pam Phillips approved it, and then he called it. So your argument is that it was a document everybody agreed to, although it was unsigned. Correct. And your argument has to also be that that cannot be set aside by the subsequent agreement, even though it specifically says that it's not going to be considered. Because when you go look at the eventual service agreement, it says it actually incorporates the project terms and conditions into the service agreement, which puts the district court in the position of having two contradictory terms. Because it actually incorporates those project documents, signed or not signed. If you look under compensation in the service agreements, it says, we're going to negotiate on a project-by-project basis by an estimate. They actually use the word estimate. And so that's incorporated into the service agreement. What's your evidence that they actually had what would have been the back, but because it was facts, it was extra pages that contained the copyright language? The declaration of Karen Knauer that says she sent it, and then the declaration of Tomlinson that said he received copies of the terms and conditions. And the other thing I'd like to point out, because we've been kind of jumping around, Kaiser indicates that the district court ruled, so to speak, in favor of Kaiser on the other libraries because of the timing of the service agreements. And if you read the order closely, Your Honors, that's not the case at all. The judge, the denial of the injunction on some of the libraries was because there was no registrations. And as a matter of fact, those are the libraries that were dismissed from this action in that motion. The other ones, the judge, the licenses haven't expired yet. And so the judge ruled, I'm not going to grant an injunction on those because they haven't expired yet. I actually asked the judge to grant an injunction on those. You know what? We don't care about the other libraries because they're not here right now. So I don't think you probably need to spend time on that. Thank you. Thank you. You have one minute for rebuttal. Let me just address the jurisdiction issue briefly. Just to correct the record, the court did dismiss five libraries that were unregistered on November 14th and asked us to file a summary judgment motion on the other five libraries. He has not issued a written order yet, but didn't say any of the things that Mr. Tardiff attested. On the issue of intent, the intent in a contract is objective, and there's been some talk about the parole evidence, but the contract is the expression of Karen Knauer's intent, not her declaration saying what she would have done. That puts this right back into the Warren case where you have a party creating copyrighted works and testifying about what they would have liked to have done with them, contradicting the contract. Just to talk about Judge Wallace's comment for a minute on the California parole evidence, that's really not different than the federal law. California doesn't permit parole evidence, however persuasive, to contradict the unambiguous terms of a contract. And under California law, a partially integrated contract is integrated as to the subjects it discusses. Subsequent acts aren't considered parole evidence. Well, subsequent acts are parole evidence if they're outside the contract and they contradicted, but I would say there's no dispute in this case that the ICS agreements have never been modified. By the terms of the ICS agreement, you can't modify them with parole evidence. It requires a writing signed by both parties. There is no such thing, and so the terms have not been modified. As to what's covered by the assignment, the contract does define materials, and I just wanted to point this out at Section 13C, and I won't read the whole, in my half a minute, the whole long description, but certainly the photographs taken as part of these libraries and these libraries are the materials that are covered by those contracts. And finally, I think we have a very interesting case, well argued by everybody. The case of Nauer v. Kaiser is submitted. Thank you. Thank you. All rise. Before the session can begin. Thank you. Thank you.
judges: Wallace, McKeown, Moskowitz